```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF INDIANA
                   SOUTH BEND DIVISION
```

STEPHEN TAGHON,                )
                               )
Plaintiff,                     )
                               )
vs.                            )    NO. 3:11-CV-386
                               )
STEVEN EULER, *et al.*,        )
                               )
Defendants.                    )

## **OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment, filed on February 22, 2012. For the reasons set forth below, this motion is **DENIED.**

BACKGROUND

Plaintiff, Stephen Taghon ("Taghon"), is an inmate in the Indiana Department of Corrections and is currently housed at the New Castle Correctional Facility. Taghon filed this action, alleging that while housed at Westville Correctional Facility, he warned the Defendants that his life would be in danger if he was placed in the IC Complex. Taghon alleges he was nevertheless placed in the IC Complex and was assaulted by fellow inmates. Taghon argues that Defendants failed to protect him, in violation of the Eighth Amendment to the U.S. Constitution. Defendants have filed the instant motion, claiming this case must be dismissed due

-1-

to Taghon's failure to exhaust the administrative process.

DISCUSSION

Summary Judgment Standard

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but

"must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.

Facts

Plaintiff, Stephen Taghon, was incarcerated at the Westville Correctional Facility ("Westville") from April 18, 2008 to February 18, 2011. (Dec. Bean ¶ 6). Timothy Bean is a Grievance

Specialist at Westville. (Dec. Bean ¶ 3). Bean is familiar with the grievance procedure followed at Westville and the rules and regulations of the Indiana Department of Corrections regarding grievances. (Dec. Bean ¶ 3). Bean's familiarity with the grievance process, computer programs, computer programs, and forms at Westville allows him to determine what grievances an offender has filed. (Dec. Bean ¶¶ 4-5). There is a grievance program in place at Westville which was in place while Taghon was incarcerated there and during the time that Taghon alleges that his rights were violated. (Dec. Bean ¶ 7).

Inmates can grieve matters that involve actions of individual staff under the grievance program at Westville. (Dec. Bean ¶ 8). The grievance process at Westville includes an attempt to resolve the complaint informally, as well as two formal steps: a formal written grievance and then an appeal of the response to the level one grievance. (Dec. Bean ¶¶ 9-12). A formal appeal is a second level of review that affords greater authority to review facility response and fashion a remedy. (Dec. Bean ¶ 12). Exhaustion of the grievance procedure requires pursuing an appeal to the final step of the grievance process. If an inmate does not receive a response from staff in accordance with the established time frames, he is entitled to move to the next stage of the process. (Dec. Bean ¶¶ 13-14).

On January 11, 2011, Taghon submitted a formal written

grievance ("Grievance #1") stating that he was assaulted by fellow inmates on January 7, 2011 and that he was warned staff that his life was going to be in danger. (Dec. Bean ¶ 16); (Ex. B). On January 14, 2011, Bean returned the grievance to Taghon requesting more details regarding what staff Taghon warned and when he warned those staff. (Dec. Bean ¶ 17); (Ex. B).

Taghon then met with Bean and they discussed the attack. (Taghon Aff. ¶ 6). On January 18, 2011, Taghon submitted a second grievance (Grievance #2) stating that he was assaulted by fellow inmates and that he warned Defendant Euler, Defendant Scott and Internal Affairs. (Ex. C). On January 24, 2011, a response to Grievance #2 was issued stating that Taghon's grievance was denied because there was no documentation of Taghon's concerns regarding his safety prior to January 7, 2011, and no evidence that Taghon warned his Segregation Case Manager or the IC Unit Manager, Defendant Watts. (Dec. Bean ¶ 19); (Ex. D).

After receiving the response to Grievance #2, Taghon filled out a "Request for Interview Form," asking to be provided a form with which to complete a grievance appeal. (Taghon Aff. ¶ 8). On January 27, 2011, Taghon received another offender grievance form from either Bean or someone in Bean's office in response to his request. (Taghon Aff. ¶ 10). That same day, Taghon filed a third written grievance (Grievance #3) stating that he did in fact warn the Administration and the IC Complex Director. (Ex. E). Taghon

believed that submitting the third offender grievance form was his written grievance appeal. (Taghon Aff. ¶ 10).

On January 31, 2011, a Return of Grievance was sent to Taghon stating that the issue in Grievance #3 was already addressed in the January 24th response. (Ex. F). Taghon took this to be a denial of his grievance appeal, and believed that he had completed the full grievance process at Westville. (Taghon Aff. ¶ 11).

Taghon did not file a formal appeal of Grievance #1, Grievance #2, or Grievance #3 regarding the events alleged in his complaint. (Dec. Bean ¶ 22). Had Taghon appealed the response to his level one grievance, some remedy could have been offered to him, such as possible transfer to another facility, separation from the staff member whose actions he complained of, and/or other relief. (Dec. Bean ¶ 23).

Taghon asserts that while he was at Westville, he was never provided any written material regarding the facility's policies or grievance procedures. (Taghon Aff. ¶ 13). Nor did he see any postings around the facility regarding how to complete the grievance process. (Taghon Aff. ¶ 13). Taghon claims his only knowledge of the steps in the grievance process was based on what other prisoners told him. (Taghon Aff. ¶ 13). Nevertheless, on April 21, 2008, Taghon acknowledged receiving orientation as a new arrival at Westville in both grievances and appeals. (Supp. Ex. A).

Administrative Remedies

Defendants argue that Taghon failed to exhaust his administrative remedies; therefore, judgment in their favor is due pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. The PLRA provides that prisoners are prohibited from bringing claims about prison conditions under 42 U.S.C. § 1983 until "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An administrative remedy is "available" if the administrative procedure has "authority to take some action in response to a complaint." *Larkin v. Galloway*, 266 F.3d 718, 723 (7th Cir. 2001) (quotation omitted).

The PLRA's exhaustion requirement is designed to provide state corrections officials "time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525 (2002). In other words, the PLRA was enacted to allow prison officials an opportunity to informally resolve disputes that inmates may have before they are brought into court, which also helps "reduce the quantity and improve the quality of prisoner suits." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007) (quoting *Porter*, 534 U.S. at 524).

Prisoners are required to exhaust all available administrative remedies before filing a lawsuit relating to prison conditions. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The failure to exhaust is an affirmative defense on which the defendants bear the burden of

proof. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (finding that "[f]ailure to do what the state requires bars, and does not just postpone, suit under § 1983."). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. His filings also must contain the "factual particularity" required by prison rules. *Strong v. David*, 297 F.3d 646, 649-50 (7th Cir. 2002). This Circuit has taken a strict compliance approach with respect to exhaustion, and a prisoner must properly follow the prescribed administrative procedures in order to exhaust his remedies. *Dole*, 438 F.3d at 809. Additionally, an inmate is required to pursue his claim through the final step of the grievance process. *Booth v. Churner*, 532 U.S. 731, 741 (2001). When an available administrative remedy has not been exhausted, the claim should be dismissed without prejudice. *See Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000).

It is undisputed that Westville had a grievance procedure in place at the time of the alleged attack, and it is undisputed that Taghon did not exhaust that grievance procedure. Thus, at first blush, it seems that Defendants have indeed proven that Taghon failed to exhaust his administrative remedies. However, the inquiry in this case centers around whether the grievance process was "available" to Taghon. Taghon contends that summary judgment

is inappropriate on grounds of failure to exhaust. This Court notes that "[t]he ability to take advantage of administrative grievances is not always an 'either-or' proposition. Sometimes grievances are clearly available; sometimes they are not; and sometimes there is a middle ground. . . ." *Kaba v. Stepp*, 458 F.3d 678, 685 (7th Cir. 2006). Cases falling within that middle ground, like this one, require a "more discriminating analysis." *Id.*

### There is a question of material fact as to whether the administrative remedies can deemed as "unavailable."

Taghon urges an exception to the exhaustion requirement. He asserts that the administrative remedies were unavailable due to prison staff's providing him the wrong form on which to file an appeal. Taghon argues that, but for the Westville staff providing him the wrong form to fill out for his grievance appeal, he would have correctly completed the grievance process. Taghon asserts that his third written grievance form contained "what normally would have been encompassed in a statement for a grievance appeal." The reasonable inference, Taghon claims, "is that if prison staff had just given him the proper form to do a grievance appeal with, [he] would have completed the grievance appeal, and the administrative remedy process." (Response, pp. 7-8).

Defendants concede that this Circuit deems administrative remedies to be unavailable- and thus excused- if a prison official prevents an offender from exhausting. See *Kaba v. Stepp*, 458 F.3d

678, 684 (7th Cir. 2006); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). However, the exhaustion requirement is not excused when it is the prisoner's mistake that caused the failure to exhaust. Dole, 438 F.3d at 811.

Taking the facts in a light most favorable to Taghon, as the Court must do at this juncture, there is a question of material fact as to whether Taghon's failure to exhaust was due to prison officials preventing him from completing the grievance appeal process. Indeed, finding that Taghon did request a form with which to complete a grievance appeal, and in response prison officials provided him the wrong form, and the use of that form led to his not being deemed to have exhausted his administrative remedies, Taghon's failure to exhaust may be excused.

Defendants argue many reasons why they believe there "is a reasonable inference that Plaintiff knew he was not appealing" when he submitted Grievance #3. However, all of those reasons are merely issues of fact.

What cannot go unnoticed is that there is no evidence in the record explaining what Taghon knew about filing a grievance appeal or Westville's procedures on how to perfect a grievance appeal. While there is evidence that Taghon acknowledged receiving orientation on grievances and appeals when he arrived at Westville, the record is silent on what exactly that orientation included. Moreover, while Bean provided a declaration explaining that a

grievance appeal must be filed to exhaust administrative remedies at Westville, he does not explain how that grievance appeal process works. In their brief, Defendants state that if Plaintiff returned the Grievance Response Report and indicated that he disagreed with the Response, then it would clearly indicated that Plaintiff wanted to appeal his denied grievance. However, there is no evidence in the record that that is the proper procedure to pursue a grievance appeal and, similarly, there is no evidence in the record that Taghon knew of that procedure.

CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is **DENIED**.

**DATED: July 30, 2012** /s/RUDY LOZANO, Judge
**United States District Court**