# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | | |
|---|---|---|
| STEPHEN TAGHON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 3:11-CV-386 |
| | ) | |
| STEVEN EULER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court following a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008) to determine all factual issues related to Plaintiff's alleged failure to exhaust his administrative remedies. For the reasons set forth below, this case is dismissed due to Plaintiff's failure to exhaust his administrative remedies.

BACKGROUND

Plaintiff, Stephen Taghon ("Taghon"), is an inmate in the Indiana Department of Corrections and is currently housed at the New Castle Correctional Facility. Taghon filed this civil rights action, alleging that while housed at Westville Correctional Facility, he warned the Defendants that his life would be in danger if he was placed in the IC Complex. Taghon alleges he was

nevertheless placed in the IC Complex and was assaulted by fellow inmates. Taghon argues that Defendants failed to protect him, in violation of the Eighth Amendment to the U.S. Constitution. On February 22, 2012, Defendants filed a motion for summary judgment, presenting as an affirmative defense their contention that Taghon failed to comply with the exhaustion requirement of the Prison Litigation Reform Act ("PLRA"). Taghon admittedly failed to exhaust the prison's grievance process, but argued that he should be excused from doing so because that process was unavailable to him. Taking the facts in a light most favorable to Taghon, this Court found there was a question of material fact as to whether Taghon's failure to exhaust was due to prison officials preventing him from completing the grievance appeal process.

On April 17, 2003, this Court conducted a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008) to determine all factual issues related to Plaintiff's alleged failure to exhaust his administrative remedies. "A *Pavey* hearing determines if an inmate has failed to exhaust all available administrative remedies and prevents an unnecessary trial if an inmate has failed to exhaust administrative remedies." *Wade v. Lain*, Cause No. 2:11-CV-454, *6 (N.D. Ind. July 24, 2012). Defendants have the burden of proof as to their affirmative defense. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(citation omitted). Thus, Defendants must show that Taghon has failed to exhaust all available remedies.

Taghon was present in person and Defendants were present by counsel. Evidence, including testimony from Taghon and Defendants' witnesses, Timothy Bean, Grievance Investigator at Westville Correctional Facility ("Westville") and James Jenkins, retired Correctional Counselor at Westville, was presented.

DISCUSSION

Facts

In making the following findings of fact, the Court considered the credibility of the witnesses.

Timothy Bean was a grievance investigator at Westville in January 2011. IDOC Policy and Administrative Procedure 00-02-301, Offender Grievance Process was the IDOC policy governing the grievance process at Westville in January 2011. This Policy became effective as of January 1, 2010. The grievance process begins with an offender trying to informally resolve his complaint with a staff member at Westville. If that does not resolve his issue, the offender can begin the formal grievance process, which consists of a formal grievance and a formal appeal.

The formal grievance process begins when an offender submits a State Form 45471, Offender Grievance, to the grievance officer at Westville. The grievance form must be adequate under the Policy. A grievance form can be rejected and returned to an offender for a variety of reasons, including that the matter "has been raised and

addressed before or is being addressed in another grievance submitted by the same offender." (Ex. A, p. 18). If the offender submits an adequate grievance form, the executive assistant logs that grievance and assigns a case number. The grievance officer investigates allegations of an adequate grievance. Following his investigation, the grievance officer formulates and logs a response to the offender's grievance and a copy of the grievance response is sent back to the offender. If the offender does not agree with the response given by the grievance officer, the offender has the right to appeal.

According to Timothy Bean, an offender triggers the appeal process by checking "disagree" located on the grievance response and then sending the response back to the grievance officer. Or, the offender can inform a counselor or case manager that he disagrees with the response given or the offender can send a correspondence to the grievance officer indicating the log number and that he disagrees with the grievance response. After receiving notification that the offender disagrees with the grievance response, the grievance officer sends the offender a formal appeal form through the institutional mail.

There is no exact appeal form identified in the Offender Grievance Process. Instead, the process states that "[a]ppeals must address the basic issue of grievance." (Ex. A, p. 23). And, any appeal must include "the original grievance, any grievance

response, and any other information submitted with the original grievance. . .." (Ex. A, p. 23).

Once an appeal is submitted to the grievance officer and accepted, the officer logs the appeal and sends a receipt back to the offender. The appeal is then sent to IDOC's Central Office, where an official will investigate and respond to the appeal. Once the response is completed, the response is sent to the grievance officer, who takes the response to the offender. The grievance process at Westville is considered exhausted upon completion of the appeal process.

In March 2008, Taghon entered the Reception Diagnostic Center upon entering the IDOC. While there, Taghon acknowledged having the grievance procedure explained to him. A month later, Taghon attended orientation at Westville and signed a form acknowledging the he received orientation in the area of grievances. James Jenkins worked as a correctional officer at Westville during this period of time and he was responsible for conducting orientation to newly arriving offenders. He provided an overview of the grievance process, including appeals, to the newly arriving offenders. Moreover, a copy of the grievance policy was provided to offenders during orientation. Taghon testified that he did not recall receiving orientation on grievance appeals procedure nor did he remember receiving any written materials regarding grievances. While Timothy Bean was unaware of exactly how the 2010 version of

the grievance policy differed from the 2008 version, the formal grievance and formal appeal steps have existed in the grievance policy at Westville since 2005.

A copy of the grievance policy was also available at Westville's law library. The law library would send an offender a copy of a policy upon the request of an offender. Offenders were informed at their orientation that they could request policies from the law library. An offender could contact their counselor, case manager, and/or unit manager for more information about the grievance process. An offender could also contact Timothy Bean regarding questions about the grievance process, including how to appeal.

Following an attack by fellow prisoners in January 2011, Taghon was in Westville's infirmary. While there, Taghon was visited by Timothy Bean. Taghon told Timothy Bean that he thought prison staff were to blame for the attack, and he wanted to file a grievance. On January 11, 2011, Taghon filed a formal grievance. Ex. D. This grievance was not accepted and logged but, instead, returned to Taghon requesting additional information. Ex. D. On January 18, 2011, Taghon submitted a second formal written grievance. Ex. E. This grievance was accepted and logged by Timothy Bean as #63572.

Timothy Bean then investigated Taghon's allegations of staff misconduct. On January 24, 2011, Timothy Bean responded to

Taghon's grievance by sending him[1] an "Offender Grievance Response Report." Ex. F. Timothy Bean stated that staff members were not aware of any concerns regarding Taghon's safety prior to his assault.

Taghon testified that when he received the response report, he read it aloud in the presence of fellow prisoners, and one of them advised him to "appeal that." Taghon testified that he completed an Interview Request form, asking to appeal grievance #63572, and sent it to Timothy Bean. Timothy Bean testified that he never received any such Interview Request form from Taghon. Thus, there is a conflict between the testimony of Taghon and Timothy Bean. Their testimony is at odds as to whether Taghon ever sent him an Interview Request, asking to appeal grievance #63572.

During and after the April 17, 2013, hearing, the Court carefully considered the credibility and demeanor of Taghon and Timothy Bean. Granted, both Taghon and Timothy Bean arguably have their own motives to fabricate their testimony. Taghon's motive is to proceed with his section 1983 litigation whereas Timothy Bean likely wishes to avoid being found to have obstructed Taghon's use of the prison grievance system.

This Court is not familiar with either Taghon's or Timothy Bean's demeanor or mannerisms. However, after careful

---

[1] At the *Pavey* hearing, Taghon stated that he received an unsigned offender grievance response report. At his prior deposition, he admitted receiving Exhibit F. This Court finds that Taghon did receive Exhibit F.

consideration, this Court credits Timothy Bean's testimony and, as such, finds that Taghon never filled out and sent an Interview Request form to Timothy Bean. Importantly, there is nothing in the record to diminish the credibility of Timothy Bean. The testimony and evidence established that Timothy Bean was helpful in assisting Taghon with filing a grievance. He visited Taghon in the infirmary without being asked to and assisted Taghon with the grievance process. In addition, he promptly responded to every grievance filing Taghon made (that is in evidence). There is nothing in the record that puts Timothy Bean's credibility in question with regard to helping assist Taghon in navigating through the grievance process. Thus, it is quite unlikely that Timothy Bean would lie under oath about not receiving an Interview Request form from Taghon.

There are things in the record that make this Court question the credibility of Taghon with respect his allegation that he made and sent an interview request form to Timothy Bean. To start, while Taghon testified that, after receiving the "Return of Grievance," he sent Timothy Bean a "Request for Interview" form stating that the wanted to appeal that grievance response, this testimony is vague, lacks any supporting detail, or corroborating evidence. Essentially, the only proof of its existence comes from the testimony of Taghon. This is troublesome, as every other grievance filing Taghon made and each response from Timothy Bean is

documented and in evidence.  It is hard to believe that the one critical piece of evidence for Taghon is the lone piece of missing evidence.

Not only is Taghon's allegation not documented, but another problem is that it is contradicted by Timothy Bean, who this Court finds credible and who testified that he never received this form. This Court has reason to discredit Taghon's testimony.  While both Taghon and Timothy Bean may both arguably have a motive to fabricate their testimony, Tahgon has a much stronger motive. Taghon's failure to assert that he filled out an interview request form requesting to appeal his grievance would be been fatal to this case.  Moreover, Taghon provided testimony at the *Pavey* hearing about not receiving Exhibit F, that was admittedly a different story than he gave in his deposition.  Although Taghon's counsel asserts mistaken memory is accountable for the change in story, Taghon still changed his story and diminishes his credibility.

Accordingly, after weighing the credibility and demeanor of both witnesses, and when forced to reconcile the conflicts between Taghon's version of events and Timothy Bean's version, the Court credits the testimony of Timothy Bean.  As such, this Court finds that Taghon never sent Timothy Bean an Interview Request, asking to appeal grievance #63572.

On January 27, 2011, Taghon submitted another State Form 45471, Offender Grievance, to Timothy Bean.  (Ex. G).  Taghon did

not include an existing grievance number on the form or provide any accompanying documents.

Timothy Bean identified this as a third formal grievance regarding Taghon's January 7, 2011, assault. As such, the grievance was not accepted and logged. Instead, on January 31, 2011, Timothy Bean sent Taghon a "Return of Grievance," noting that "[t]he issue in this complaint or concern was addressed previously in Grievance # 63572." Ex. H. Timothy Bean never received any other documentation from Taghon regarding his grievances. Taghon believed that the Return of Grievance was a denial of the his appeal. As such, he did nothing further to complete the grievance process, because he believed the document he received was notice of the denial of his appeal.

Analysis

The PLRA provides that prisoners are prohibited from bringing claims about prison conditions under 42 U.S.C. § 1983 until "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An administrative remedy is "available" if the administrative procedure has "authority to take some action in response to a complaint." *Larkin v. Galloway*, 266 F.3d 718, 723 (7th Cir. 2001) (quotation omitted). Thus, a remedy that prison officials impede a prisoner from using is deemed "unavailable." *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004). For example,

not ruling on a grievance, not providing necessary forms and otherwise preventing access to administrative remedies have been found to render administrative remedies unavailable. *Id.* at 656(listing cases).

The PLRA's exhaustion requirement is designed to provide state corrections officials "time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525 (2002). In other words, the PLRA was enacted to allow prison officials an opportunity to informally resolve disputes that inmates may have before they are brought into court, which also helps "reduce the quantity and improve the quality of prisoner suits." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007) (quoting *Porter*, 534 U.S. at 524).

The failure to exhaust is an affirmative defense on which the defendants bear the burden of proof. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (finding that "[f]ailure to do what the state requires bars, and does not just postpone, suit under § 1983."). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. His filings also must contain the "factual particularity" required by prison rules. *Strong v. David*, 297 F.3d 646, 649-50 (7th Cir. 2002).

This Circuit has taken a strict compliance approach with

respect to exhaustion, and a prisoner must properly follow the prescribed administrative procedures in order to exhaust his remedies. *Dole*, 438 F.3d at 809. Substantial compliance is not enough to carry the day. *Lewis v. Washington*, 300 F.3d 829, 833-34 (7th Cir. 2002). Additionally, an inmate is required to pursue his claim through the final step of the grievance process. *Booth v. Churner*, 532 U.S. 731, 741 (2001). When an available administrative remedy has not been exhausted, the claim should be dismissed without prejudice. *See Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000).

In this case, the parties agree that Taghon did not complete the administrative grievance process at Westville. Defendants assert this failure to exhaust as an affirmative defense. Taghon contends that the applicable 2011 grievance process was not provided or accessible to him and also that the prison staff's failures caused him to not properly exhaust the grievance process, rendering the process unavailable. Surely, "[a]n institution cannot keep inmates in ignorance of the grievance procedure and then fault them for not using it." *Hall v. Sheahan*, No. 2000 C 1649, 2001 WL 111019, * 2 (N.D. Ill. Feb. 2, 2001). However, "correctional officials are entitled to the benefit of [its affirmative defense] as long as the institution has made a reasonable, good-faith effort to make a grievance procedure available to inmates; an inmate may not close his eyes to what he

reasonably should have known." *Id.*

This Court finds that the applicable grievance procedure was available to Taghon. At the very least, Westville made a reasonable, good-faith effort to make it available to him. The evidence at the hearing established that Taghon received orientation as to Westville's grievance process in 2008, and that the formal grievance process remained unchanged through 2011. The grievance process was also accessible to him. Not only was Taghon oriented to the grievance process, but there was a copy that was readily available in the law library. In the event Taghon wanted a copy of the grievance process, all he needed to do was request one from the law library, which he did not do.

Again, as the parties' concede, Taghon did not properly exhaust his grievance process. At most, Taghon filed what Timothy Bean believed was an initial grievance for a third time, which was rejected as a duplicate grievance. Even if Taghon desired that his filing constitute an appeal, that is not the proper way to file an appeal. Unfortunately for Taghon, compliance with the grievance procedure is strictly construed and partial compliance with the grievance procedure is not enough. *Lewis*, 300 F.3d at 833-34. If Taghon was confused or otherwise in the dark about the grievance process, he could have sought out help or advice, which he chose not to do.

In fact, after Taghon filed his third initial grievance, he

received a notice from Timothy Bean, informing Taghon that it was rejected as a duplicate. Thus, even if Taghon initially believed that submitting the third initial grievance form constituted an appeal, Timothy Bean informed him otherwise. Ex. H. If Taghon desired to appeal, he should realized that he needed to do so at that point. However, he did nothing. Taghon did not contact anyone or make any effort to perfect his appeal. Because no prison official did anything that caused Taghon to fail to exhaust the grievance process, this Court can not say the grievance process was "unavailable" to him.

"The exhaustion requirement is strictly enforced, in part because it allows prison officials to promptly correct errors internally and to develop a factual record before a case moves to federal court." *Canady v. Davis*, 376 Fed. Appx. 625, 626 (7th Cir. 2010). By not appealing the denial of his grievance, Taghon deprived Westville of this opportunity, and is foreclosed from bringing his claim here.

CONCLUSION

For the reasons set forth above, this case is dismissed due to Plaintiff's failure to exhaust his administrative remedies.

**DATED: October 10, 2013**          /s/RUDY LOZANO, Judge
                                     **United States District Court**